JAMES T. ELWELL v. JOHN GOODNOW and Others.

STATE OF MINNESOTA ex rel. WALLACE G. NYE v. DISTRICT COURT
OF HENNEPIN COUNTY.[1]

February 2, 1898.

Nos. 10,682, 10,811—(144, 146).

Certiorari—Criminal Contempt—Sufficiency of Evidence.
> Held, that the judgment herein, convicting the relator of criminal contempt, is not supported by the evidence.

From an order and judgment of the district court for Hennepin county, Russell, J., adjudging him guilty of contempt of court and sentencing him to pay a fine of $100, Wallace G. Nye appealed to the supreme court. He also brought the case before the supreme court by writ of certiorari. Reversed.

*Rome G. Brown* and *Frank Healy*, for appellant and relator.

Where the charge is not upon a direct contempt, done in the presence of the court itself, it is an elementary rule of law that it must appear and be found that the act charged was one which defeated or prejudiced the right or remedy of a party to the action, also that it tends to impede or embarrass the court. This general principle of the law of contempt is part of the Minnesota statute.

[1] Reported in 73 N. W. 1092.

Under our statute when the act is not alleged and proven to defeat or prejudice the right or remedy of the party to an action or special proceeding, a judgment for contempt cannot be rendered imposing a fine of more than fifty dollars. G. S. 1894, § 6156. Our statute, after specifying twelve instances of contempt, reads as follows:

"But when the contempt is one of those mentioned in the first or second subdivisions of the last section, it must appear that the right or remedy of a party to an action or special proceeding was defeated or prejudiced thereby, before the contempt can be punished by imprisonment or by a fine exceeding fifty dollars." G. S. 1894, § 6156.

Reference to the preceding section and the subdivisions referred to shows clearly that there is a clerical omission in this section. The two subdivisions referred to are those applying to direct contempt committed in the presence of the court. The rest of the subdivisions apply to constructive contempts. It is evident that a clerical mistake has been made here which leaves section 6156 an absurdity on its face. This section likewise occurs in this form in G. S. 1878, c. 87, § 2, and in G. S. 1866, c. 87, § 2. In the revisers' report (1866) and in P. S. 1858, c. 81, § 2, and in R. S. 1851, c. 92, § 2, this portion of the section is printed as follows:

"But when the contempt is *not* one of those mentioned in the first or second subdivisions of the last section, it must appear that the right or remedy of a party to an action or special proceeding was defeated or prejudiced thereby, before the contempt can be punished by imprisonment or by a fine exceeding fifty dollars."

This shows that the absurdity in section 6156 is clearly one which arises from a clerical error. Under these circumstances the court will read and enforce this statute the same as though the mistake had not been made in G. S. 1866, and as the statute reads in the earlier compilations. Where a typographical or clerical mistake or omission in the wording is manifest, and a correction will render the statute effectual and consistent with its intent and purposes, the statute will be read as so corrected.. Moody v. Stephenson, 1 Minn. 289 (401); State v. Small, 29 Minn. 216; Kennedy v.

Gibson, 8 Wall. 498; Jocelyn v. Barrett, 18 Ind. 128; Nazro v. Merchants, 14 Wis. 319; Turner v. State, 40 Ala. 21; Matthews v. Com., 18 Grat. 989; Pond v. Maddox, 38 Cal. 572; Jenks v. Langdon, 21 Oh. St. 362, 370; U. S. v. Stern, 5 Blatch. C. C. 512.

*Francis G. Burke* and *Geo. D. Emery,* for respondents.

START, C. J.

These cases are in fact one and the same. The appellant, Wallace G. Nye, was convicted in the district court of Hennepin county of a constructive criminal contempt, and sentenced to pay a fine of $100, and he brought the case to this court, both by appeal and certiorari.

It is claimed on the part of the relator: (a) That the moving papers upon which the order requiring him to show cause why he should not be punished for contempt were insufficient to give the trial court jurisdiction to proceed against him; (b) that the evidence upon the hearing of the charge was not sufficient to justify his conviction.

Conceding that the moving papers were sufficient, the judgment must be reversed on the last ground stated. The charge against the relator was a constructive criminal contempt; that is, one not committed in the immediate presence of the court. Upon the trial of the accused upon such a charge the trial court cannot act upon facts within its own knowledge, but the guilt of the accused must be established by competent evidence given at the trial. State v. Ives, 60 Minn. 478, 62 N. W. 831. All that it is necessary to here state in support of our conclusion is an orderly and concise statement of the history of this case, the precise charge made against the relator, and the evidence in support of it.

On January 5, 1897, James T. Elwell commenced an action against Goodnow, MacMullan, Andrus, Marchant, the city of Minneapolis, Wallace G. Nye, the relator, as comptroller of the city, and A. C. Haugan, as its treasurer. The complaint alleged a partnership existing between the first four named defendants, which was entitled to the profits of a certain contract with the city for the removal of garbage, made between the city and MacMullan in the name of the latter; that Goodnow was collecting from the city

the monthly payments due on the contract, without accounting to the partnership therefor; and prayed for the appointment of a receiver of the partnership, and that Goodnow account to the partnership for all profits received by him, and that he be enjoined from applying for or receiving further payments from the city under the contract, and that the city, its comptroller and treasurer, be enjoined from paying any money to Goodnow under the contract, or issuing to him or any other person any warrants for such payments, except upon the order of the court.

The relator appeared, and demurred to the complaint for the reason that it did not state a cause of action as to him. The city interposed a similar demurrer. It does not appear from the record that the issues of law made by the demurrers had been determined at the time the contempt proceedings were had. On March 8, 1897, an order was made and served on the defendants to show cause why a receiver should not be appointed for the partnership to receive and collect money and warrants from the city due and to become due under the contract for the removal of garbage, and why the city and its officers should not be restrained from paying out and delivering the money or warrants to any person except the receiver; and meanwhile, and until the further order of the court, the city and its comptroller and treasurer were each enjoined from paying or delivering any money or warrants on the contract to any one.

On May 3, 1897, the court made its order appointing William P. Roberts receiver of the partnership to receive and collect all moneys due or to become due from the city under the contract. The part of this order relating to the city and its officers was in these words:

"And it is further ordered, that the city of Minneapolis and its treasurer and comptroller pay to said receiver, and to no other person, all moneys now due and owing, and which hereafter may become due and owing, from said city under said contract, during said receivership, and until the further order of this court."

The receiver qualified, served the order appointing him upon the comptroller, the relator herein, and demanded of him, as comptroller, that he deliver to him, the receiver, certain city warrants for $1,716.66 each, which had been theretofore duly signed, author-

izing payments on the garbage contract for the months of January, February, March, and April, 1897. The relator declined so to deliver the warrants, and then stated to the receiver the reasons for such refusal as hereinafter stated. The receiver then presented his affidavit showing such demand and refusal to the court. Thereupon the court made its order to show cause, dated May 8, 1897, which, after reciting that it appeared to the court from the affidavit of the receiver that the city of Minneapolis, its comptroller and treasurer, had without good cause disobeyed the order of the court of May 3, 1897, by refusing to pay to the receiver, pursuant to such order, the moneys and warrants therein directed to be paid to him by them, directed the city of Minneapolis, Wallace G. Nye, its comptroller, and C. S. Hulbert, its treasurer, forthwith to deliver the warrants in question to the receiver, and pay to him the money mentioned therein. It further directed as follows:

"It is further ordered that, if the said Wallace G. Nye and said C. S. Hulbert, comptroller and treasurer respectively aforesaid, refuse or fail to deliver all of said warrants and to pay all of said moneys as herein above ordered to do, forthwith as aforesaid, that then in that event, they and each of them, show cause, if any they have, before this court, on the 11th day of May, 1897, at the court room of the undersigned in the court house, at nine o'clock a. m., why they, and each of them, should not be punished for contempt of court for failing and refusing to deliver said warrants and to pay said money as ordered by the court, dated May 3, 1897, and as ordered and directed by this order as herein aforesaid."

The relator appeared in response to this order to show cause and filed his verified answer, stating that none of the money or warrants were due or owing from the city to the partnership, or any member thereof, or to the receiver. The answer then set forth specifically and in detail facts tending to show that the money and warrants belonged to the Minneapolis Western Railway Company by virtue of a contract and assignment made by MacMullan to and with the railway company, which were filed with the relator, as the comptroller of the city, long before the commencement of the action in which the receiver was appointed. It also alleged that the railway company had demanded the warrants, and that he, the comptroller, had detained them in his possession, and declined to

deliver them to the receiver by the advice and direction of the city attorney; and that the warrants were duly taken from his possession on the morning of May 11, before the hour appointed for the hearing on the order to show cause, by the sheriff, by virtue of proceedings in a replevin action wherein the railway company was plaintiff and the city of Minneapolis and the relator, as its comptroller, were defendants.

No denial or reply was made to this answer, and the only evidence taken by the court in support of the charge was that of the relator himself, who testified, in effect, that the receiver made demand upon him for the warrants; that he explained to him that they were claimed by the railway company, who had made a previous demand for them, which demand he then exhibited to the receiver; and, further, that upon the demand of the sheriff,. and service upon him of the affidavit, indorsement thereon, and bond in replevin action (which papers are hereinafter designated as the process in replevin), he delivered the warrants to the sheriff. This evidence was uncontradicted, and in considering whether it is sufficient to support the conviction of the relator the scope and effect of the order of May 3, appointing the receiver, must be first determined, for the sole charge against him was a disobedience of this order, as reiterated in the order to show cause of May 11.

All orders made by courts in matters of which they have jurisdiction must be obeyed, although improvidently made. If they are wrong, application should be made to the court to correct them, and, if the evidence shows a voluntary disobedience of the orders in question by the relator, his conviction was right. It cannot be assumed that the court, in making its order of May 3, intended to exceed its jurisdiction, and the order must be construed with reference to the jurisdiction of the court in the premises.

This order does not assume to adjudge that there is any specific personal property or fund belonging to the partnership, or any member thereof, in the possession of the city, or any of its officers; and the court did not thereby obtain possession or jurisdiction over any specific property or fund. The order simply directs the city, its treasurer and comptroller, to pay to the receiver, and to no one else, all moneys then due or to become due from the city by virtue

of the garbage contract. It cannot be construed as an order to pay the receiver any money on the contract, due to a third person, not a party to the action. It does, however, invest the receiver with all the rights of the partnership, or any member thereof, to the money growing out of such contract; but it cannot be construed as authorizing the receiver to collect from the city the money claimed to be due or to become due from it to the partnership, or any member thereof, by proceedings for contempt, for the court had no jurisdiction to make such an order. The city, as suggested, had no property or fund in its possession belonging to the partnership or receiver. At most, it was the debtor of the partnership, and it would be a new and intolerable exercise of the power of the court to punish for contempt to permit a member of a partnership to bring an action against his co-partners for an accounting as to profits, and for the appointment of a receiver, and join as defendants all of the debtors, real or supposed, of the partnership, obtain an order directing them to pay to the receiver the amount claimed to be due or to become due from them to the firm, and to compel such payment by punishing them for contempt if they refused.

Giving, then, to the order of May 3 the most favorable construction for the receiver which is permissible consistently with the powers of the court in the premises, it invested the receiver with the right to all money, accrued or to accrue from the contract, belonging to the partnership, or any member thereof, with the right to enforce payment thereof to him by the usual and ordinary remedies provided by law. It also forbade its payment to any one except the receiver. As the only act the relator as comptroller could do with reference to the payment of this or any other money by the city would be to countersign and deliver warrants therefor, it may be conceded that the order of May 3 enjoined him from delivering the warrants in question to any one except the receiver; hence, if he was guilty of contempt of court, it was because he delivered the warrants to the sheriff.

But he did not voluntarily deliver them to the sheriff; they were taken from him by the sheriff, the officer of the law, by virtue of process in the replevin action, and he was not guilty of contempt of court for yielding obedience to the demand of the law. Neither

was he so guilty by reason of his refusal to deliver the warrants to the receiver upon his demand, for the reason that it was only money due or to become due to the partnership, or some member thereof, that the receiver was entitled to, and when the relator informed him that the money in question had been assigned and notice thereof given to the city, and was claimed by the railway company, if he wished to test the validity of such claim, his remedy was to institute a proper action or proceeding to which the railway company and city were parties.

The evidence, for the reasons suggested, was insufficient to establish the guilt of the relator of the charge made against him.

. Judgment reversed.