FRANK JOHNSON AND ANOTHER v. GOTTLIEB W. FROELICH.[1]

January 3, 1936.

No. 30,673.

[1]Reported in 264 N. W. 232.

*Gottlieb W. Froelich* and *Herbert T. Park,* for appellant.
*Frank J. Danz,* for respondents.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from an order adjudging him in contempt of court and imposing a jail sentence as punishment therefor. We shall as briefly as possible state the facts as same were developed in the court below.

Plaintiffs and defendant are owners and occupants of adjoining properties in St. Paul. Plaintiffs' home is located within a very few feet of the building occupied by defendant. The latter is a large structure, old and dilapidated. The ground upon which it is situated is somewhat lower than the ground upon which plaintiffs' residence is built. Plaintiffs brought suit against defendant to enjoin him from maintaining a so-called dry wall between the two properties, their claim being that he had encroached upon their lot in the construction thereof. Injunctive relief was also sought in respect of a drain trough from defendant's roof which discharged

the water gathered thereon upon their property, thereby washing away the soil to the extent of making the foundation under their house insecure. The case came on for trial and was duly heard. Upon stipulation and agreement of counsel in open court it was provided that injunctive relief be granted, particularly in the following respects: Defendant was enjoined (1) "From maintaining any part of a dry wall constructed by said defendant over and upon east side of the land of plaintiffs" (describing it) insofar as the same encroached upon their property; (2) from removing the lateral support from land of plaintiffs, and from maintaining a water trough in such fashion as to discharge the water from defendant's house upon plaintiffs' lot; requiring defendant forthwith to remove any and all encroachments of said dry wall from plaintiffs' premises, remove the water trough or construct a proper and adequate water trough in rear of dwelling occupied by him so as to prevent the casting of rain water upon the premises of plaintiffs; to construct in a good and workmanlike manner within two weeks from the date of the judgment temporary supports for the lateral support of plaintiffs' land; to replace within 60 days from the date of said judgment the soil, sand, and dirt defendant had caused to be removed from plaintiffs' property, and to construct and furnish in a good, workmanlike, and substantial manner permanent and adequate lateral support for plaintiffs' property.

This judgment was entered April 4, 1935, and defendant duly served with a certified copy thereof on April 6.

Defendant did absolutely nothing to comply with the judgment so entered. Instead he proceeded with further violations. Because thereof plaintiffs sought to have him punished for contempt. He was cited to appear before the court on June 25, 1935. At that time the matter was gone into fully. Defendant objected to the introduction of any oral testimony respecting the violations complained of and insisted that the matter be submitted to the court on affidavits. This was done. Defendant's own admissions, as disclosed by the transcript, fully justified a finding of wilful disregard on his part to comply with the judgment. At the conclusion of the hearing the court said: "I will adjudge the defendant in contempt

of court and the sentence is he be confined in the Ramsey county jail for a period of 30 days. I will suspend the sentence until next Monday, July 1st, at 10 o'clock A. M. In the meantime defendant can comply with the order of the court or make any further showing he wants [to make] or appeal or take such action as he is advised in the matter."

Pursuant thereto the matter came before the court again on July 1. At that time defendant appeared in person and by counsel. Further discussions were had and arguments made. The record discloses beyond question that defendant was only stalling for time. Even his own counsel advised him to "put up a lateral support there to protect the Johnson's property." The court again adjourned the matter and earnestly, yet sympathetically, admonished defendant to get busy with the performance of the obligation he had voluntarily assumed and agreed to perform, all embodied in and made the basis for the judgment. The record bespeaks the court's solicitude in defendant's behalf to avoid committing him to jail for violation of the injunction. Accordingly, the matter was adjourned until July 10. The court in admonishing defendant said: "If you haven't got that piling in and something to protect it [plaintiffs' property] I am going to let the order stand." Defendant assured the court that he would try in good faith to comply and assured the court that he duly appreciated the leniency shown.

The matter came on again pursuant to adjournment on July 10. At that time defendant duly appeared in person but without counsel. Instead of making any showing of compliance he contented himself with a motion "to vacate the order and judgment of the court made on the 25th day of June, 1935, on the ground that the same is contrary to law." A great deal of argument took place, and various statements of counsel for plaintiffs and defendant appear in the record. It appears therefrom that what defendant was seeking to accomplish was to get further time so that he might take an appeal to this court. The court informed him that he would have to give sufficient notice of appeal and proceed with service thereof and furnish appeal bond. The matter was accordingly adjourned until July 17 to enable defendant to accomplish this result.

On July 17 the parties again appeared before the court, and again it was the same old story, defendant had done nothing. Again the court earnestly urged upon him the necessity of speedily determining for himself just what he was going to do; that additional time had been granted so often and plaintiffs' property was in such serious plight that action on defendant's part was absolutely essential. Again defendant pleaded for additional time, saying that he was going to see attorneys. "This morning I have tried to get in touch with three different attorneys to help me in this matter." There is genuine justification for the court's remarks: "Well, you better consider them. You have been dilly-dallying along, exasperating everybody." Upon defendant's request in that behalf, the court adjourned the matter until the following day. At that time defendant appeared and said that he had served his notice of appeal. He had not secured the bond required in such cases, nor had he paid the clerk's deposit fee. In spite thereof the court again continued the matter until July 23. At the time of the last mentioned adjournment defendant informed the court that he had finally gotten around to serve notice of appeal to this court and had caused a cost bond to be executed. But even then he had not deposited with the clerk the required appeal fee. The court stayed further proceedings until July 25, when the appeal was at last perfected.

Upon this showing defendant claims error. If there be error it is obviously that of showing him too much leniency. If a court's judgment is to be treated with such utter disregard of duty legally imposed, then clearly injunctive relief holds forth but little hope of judicial redress. If defendant had shown any honest effort to comply with the terms of the judgment, solemnly entered upon his own agreement as to what was to be done by virtue thereof, no such results as have obtained could have resulted. Instead, defendant has by word and act sought to avoid its every provision. Such conduct cannot be condoned unless the court is to take judicial notice that defendant's conduct is directly due to a mind that has failed to function rationally. That seems the only excuse.

Proceedings in contempt of court are regulated by statute. 2 Mason Minn. St. 1927, §§ 9792 to 9807, inclusive. Section 9793 provides:

"Constructive contempts are those not committed in the immediate presence of the court, and of which it has no personal knowledge, and may arise from any of the following acts or omissions: * * * 3. Disobedience of any lawful judgment, order, or process of the court."

Section 9804 provides:

"Whenever the contempt consists in the omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he performs it, * * *."

See also 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 1702, *et seq.*, and cases cited under notes.

"A violation of an injunction is punishable as a contempt of court." 3 Dunnell, Minn. Dig. (2 ed.) § 4504; State ex rel. Hoefs v. District Court, 113 Minn. 304, 129 N. W. 583.

In that case defendant was restrained by injunction from constructing a ditch. In violation thereof he proceeded with its construction. It was there held that the court was authorized to require the defendant, to purge himself of the contempt, to fill up the ditch. The case is illustrative of the power of the court to enforce its decrees.

Many cases have been before this court, and we shall not attempt to cite all thereof. However, the statement of this court in State ex rel. Nye v. District Court, 71 Minn. 383, 388, 73 N. W. 1092, 1094, is in point:

"All orders made by courts in matters of which they have jurisdiction must be obeyed, although improvidently made. If they are wrong, application should be made to the court to correct them, and, if the evidence shows a voluntary disobedience of the orders in question by the relator, his conviction was right. It cannot be assumed that the court, in making its order of May 3, intended to exceed its jurisdiction, and the order must be construed with reference to the jurisdiction of the court in the premises."

State ex rel. Warfield v. Becht, 23 Minn. 411; State ex rel. Fischer v. District Court, 65 Minn. 146, 67 N. W. 796.

Counsel for plaintiffs at time of oral argument here informed us that since this appeal was perfected the city of St. Paul had condemned defendant's property, removed the offending wall, and filled in the dirt and sand removed by defendant. He assured us that his clients have no desire to have defendant punished. The relief sought by them has been furnished by the city by virtue of its condemnation proceedings. Undoubtedly the trial court will carefully weigh and consider plaintiffs' wishes in this regard and determine what further is to be done in the premises. Its attitude in the past has been such as to indicate most emphatically that it is not immune to any reasonable plea for mercy. But defendant's plea in that behalf must be made there. Upon this record we can only do what to us seems imperative, sustain the order from which the appeal was taken.

So ordered.

